UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM SERVICES LLC, et al.,<br><br>Petitioner(s),<br>v.<br><br>CHUNRENLAN ELECTRONIC TECHNOLOGY JIANGSU CO., LTD,<br><br>Respondent(s). | CASE NO. C26-670-KKE<br><br>ORDER ON PETITION AND MOTION TO VACATE ARBITRATION AWARD AND CROSS-MOTION TO CONFIRM ARBITRATION AWARD |

Petitioners Amazon.com Services LLC and Amazon.com, Inc. (collectively, "Amazon") brought this action to vacate an arbitration award in favor of Respondent Chunrenlan Electronic Technology Jiangsu Co., Ltd. ("Chunrenlan"). During the arbitration, the arbitrator applied expedited procedures intended for relatively small dollar disputes. In his final award, he ordered Amazon to pay Chunrenlan lost business or profit damages, but left it to Chunrenlan to calculate the amount of the damages. Chunrenlan proceeded to calculate its lost profit damages as a sum far exceeding the maximum amount the parties agreed to arbitrate using the expedited procedures. And since the proceedings were closed, the arbitrator took no further action to review Chunrenlan's calculation.

Because the arbitrator failed to resolve the dispute as the parties had agreed and the award has no arguable basis in the parties' contract, the Court finds that the arbitrator exceeded his powers under Section 10 of the Federal Arbitration Act ("FAA"). However, the Court also finds that the

award is divisible and thus vacates only the offending provision and confirms the remainder.

# I. BACKGROUND

## A. The Parties' Dispute and the Arbitration

Amazon operates the largest online retail platform, which allows third-party sellers to list and sell products to customers through Amazon's website. Dkt. No. 1 at 6; Dkt. No. 2-2 ¶ 4 (citing MAJ. STAFF OF H. SUBCOMM. ON ANTITRUST, COMMERCIAL, & ADMIN. L., 117TH CONG., INVESTIGATION OF COMPETITION IN DIGITAL MARKETS 214 (Comm. Print 2022)). To sell products on Amazon, third-party sellers must agree to Amazon's Business Solutions Agreement ("BSA"). Dkt. No. 2 ¶ 3. Section 2 of that agreement provides that Amazon may permanently withhold funds to sellers if Amazon determines the seller account "has been used to engage in deceptive, fraudulent, or illegal activity" or to "repeatedly violate" Amazon's policies. Dkt. No. 2-1 at 3.

Chunrenlan is an online retailer based in Yixing, China, which, until several years ago, sold products through Amazon. *See* Dkt. No. 14-5 at 1; Dkt. No. 14 at 7. In September 2022, Amazon deactivated Chunrenlan's Amazon seller account, citing concerns over allegedly infringing products, Chunrenlan's high rate of customer returns and unauthorized use of multiple seller accounts, and other allegedly fraudulent or deceptive conduct on Amazon's platform. Dkt. No. 14-1 ¶ 23, Dkt. No. 2-8 ¶¶ 23–33. At the same time, under the BSA's withholding provision, Amazon withheld just over $36,000 from Chunrenlan's account, representing 14-days of accrued proceeds from Chunrenlan's Amazon sales. Dkt. No. 2-8 ¶ 34.

In August 2024, after unsuccessfully appealing its deactivation to Amazon, Chunrenlan filed an arbitration demand pursuant to the BSA's arbitration clause. Dkt. No. 2 ¶ 4; Dkt. No. 2-2. Because Chunrenlan claimed less than $50,000 (exclusive of interest, fees, and costs), the arbitration proceeded under the American Arbitration Association's ("AAA") expedited procedures, which apply to smaller claims and limit the availability of discovery or motions. *See*

Dkt. No. 2 ¶ 5, Dkt. No. 2-4 at 11, 40–42. Under the AAA's rules, the expedited procedures apply, by default, to all cases in which no claim exceeds $100,000 (exclusive of interest, fees, and costs), unless the parties agree otherwise. Dkt. No. 2-4 at 11. Amazon's BSA lowers the maximum claim amount for the expedited procedures to $50,000. Dkt. No. 2-1 at 9.

The International Centre for Dispute Resolution—AAA's division for cross-border disputes—appointed arbitrator Eric van Ginkel, who held a preliminary meeting with counsel and set a briefing schedule. Dkt. No. 14-1 ¶¶ 15–18, Dkt. No. 14-2 at 1. The parties agreed to proceed via a desk arbitration—meaning there would be no hearing. Dkt. No. 14-15 at 1. And Amazon and Chunrenlan then submitted an opening and response brief, respectively, and—at the arbitrator's request—a reply and sur-reply brief. Dkt. No. 14-1 ¶¶ 18–19. The arbitrator declared the proceedings closed on October 13, 2025; issued his final award on November 25, 2025; and transmitted the award to the parties the next day. Dkt. No. 14-1 ¶ 20, *id.* at 8, Dkt. No. 14 at 9.

In his final award, the arbitrator found that the withholding provision in Section 2 of the BSA—by which Amazon was retaining Chunrenlan's sales proceeds—constituted an unenforceable penalty clause under Washington law. Dkt. No. 14-1 ¶¶ 26–32 (citing *Watson v. Ingram*, 881 P.2d 247, 249 (Wash. 1994) (holding that liquidated damages "must be a reasonable forecast of just compensation" and "the harm must be such that it is incapable or very difficult of ascertainment")). Because the provision was unenforceable regardless of Chunrenlan's conduct, the arbitrator made no findings on whether Chunrenlan violated the BSA or whether Amazon properly terminated Chunrenlan's account. For damages, the arbitrator ordered Amazon to release "the sum of $36,321.21" or, "[i]f different from this amount, … the full amount of sales proceeds that was in [Chunrenlan's] seller account at the time of deactivation." *Id.* at 7–8. The arbitrator also awarded 12% interest on the withheld funds. *Id.* at 8 (citing WASH. REV. CODE § 19.52.020).

Most important for purposes of this case, the arbitrator ordered Amazon to pay damages to

Chunrenlan for "the loss of business and profits, *according to proof provided and in an amount calculated by* [*Chunrenlan*] within 10 days of the date of this Award[.]" Dkt. No. 14-1 at 8. The BSA contains an express waiver of "any loss of profit, revenue, business, … or consequential damages."[1] Dkt. No. 2-1 at 6. And while both sides discussed this provision in their arbitration briefs, the arbitrator's decision never referenced their arguments, mentioned the limitation of liability clause, or explained why the clause did not preclude the arbitrator's award. *See* Dkt. No. 2-7 at 27–28, Dkt. No. 2-5 at 25; *see also generally* Dkt. No. 14-1.

On the deadline set by the arbitrator—December 5, 2025—Chunrenlan filed a "brief on damages," calculating, among other things, its lost profits. Dkt. No. 2-12 at 2–3. Chunrenlan calculated that, as a result of "Amazon's illegal account blocking and proceed seizure[,]" it suffered $271,061 in lost profits—over seven times the withheld proceeds awarded by the arbitrator and well over the maximum claim limit for the expedited procedures. Dkt. No. 2-12 at 2–3. Chunrenlan arrived at this sum by (1) calculating its annual Amazon sales between September 2020 and September 2022; (2) discounting that figure by 35%, which—according to its brief—Amazon "[g]enerally" charges in "fees or expenses"; and (3) multiplying the result by three, explaining that "[Chunrenlan] could not sell anything on Amazon in the past three years[.]" *Id.* In other words, Chunrenlan calculated its lost profits as equal to its average revenue on Amazon over three years, less the estimated Amazon charges. In addition, Chunrenlan's brief argued it was entitled to $27,775 in attorney's fees, although the arbitrator did not award such fees. *Id.* at 3–8.

---

[1] The BSA's limitation of liability clause states, in relevant part:

> We will not be liable (whether in contract, warranty, tort …, or otherwise) … for … any loss of profit, revenue, business, or data or punitive or consequential damages arising out of or relating to this agreement, even if Amazon has been advised of the possibility of those costs or damages. Further, our aggregate liability arising out of or in connection with this agreement or the transactions contemplated will not exceed at any time the total amounts during the prior six month period paid by you to Amazon in connection with the particular service giving rise to the claim."

Dkt. No. 2-1 at 6.

There were no further proceedings before the arbitrator. Although Chunrenlan's brief is framed as a "request" to the arbitrator to "order Amazon to pay USD$271,061" plus attorney's fees (Dkt. No. 2-12 at 3, 8), the arbitrator had, by this point, already declared the proceedings closed—apparently envisioning that the only remaining step was for Chunrenlan to calculate its lost profits and for Amazon to pay them. Dkt. No. 14-1 ¶ 20; *id.* at 8. Amazon reports (and Chunrenlan does not dispute) that Chunrenlan currently claims to be entitled to $405,801.02 based on (1) the withheld proceeds awarded by the arbitrator, (2) Chunrenlan's calculations of lost profits and attorney's fees, and (3) accrued interest. Dkt. No. 2 ¶ 12; *see also* Dkt. No. 14 at 9, 12 (Chunrenlan's brief referencing the $405,801.02 figure).

**B. Service Issues and Procedural History**

According to Amazon, the parties' agreed practice during the arbitration was to serve briefs and other documents on each other's respective counsel via email. Dkt. No. 4 ¶ 5. Attorney Eric Lind represented Chunrenlan during the arbitration. Dkt. No. 2-11 ¶ 3. On January 30, 2026, Amazon's counsel emailed Mr. Lind to ask if he would accept service of a petition to vacate the award by email. Dkt. No. 4 ¶ 5. Ten days later, Mr. Lind responded, stating he would not accept service because he is not licensed to practice in Washington State and did not intend to appear in Washington court proceedings related to Amazon's petition. Dkt. No. 4-1 at 2.

On February 25, 2026, Amazon filed the pending petition to vacate the arbitration award and, at the same time, a motion for alternative service under Federal Rule of Civil Procedure 4(f)(3). Dkt. Nos. 1, 3. On the same day, Amazon sent the petition to Mr. Lind by email and certified mail. Dkt. No. 4 ¶ 5. Mr. Lind replied to the email, again declining to accept service. Dkt. No. 14-18 at 1. But before the motion was resolved, Chunrenlan appeared via counsel. Dkt. No. 8. On March 24, 2026, the Court granted Amazon's motion for alternative service. Dkt. No. 10. The parties then stipulated to a briefing schedule that included briefing on Chunrenlan's

anticipated cross-motion to confirm the award. Dkt. No. 12.

The Court approved the stipulated briefing schedule (Dkt. No. 13), Chunrenlan responded to Amazon's petition and cross-moved to confirm the award (Dkt. No. 14), and both parties filed reply briefs (Dkt. Nos. 16, 17).[2] The Court finds oral argument unnecessary. Amazon's petition and Chunrenlan's cross-motion are now ripe for the Court's consideration.

## II. DISCUSSION

Amazon's petition seeks to vacate the arbitrator's award under Section 10 of the Federal Arbitration Act ("FAA"), arguing that the arbitrator exceeded his authority and failed to provide a fundamentally fair hearing. 9 U.S.C. § 10(a)(3), (4). Chunrenlan defends the award and contends that Amazon failed to serve its petition within the time required by the FAA. The Court begins by considering the service issue Chunrenlan raises.

### A. Service of Amazon's Petition to Vacate

The FAA requires a party seeking to vacate an arbitration award to serve "[n]otice of [the] motion to vacate … upon the adverse party or his attorney within three months after the award is filed or delivered." 9 U.S.C. § 12. Amazon filed the petition and its motion for alternative service (and concurrently emailed and mailed its petition to Mr. Lind) on February 25, 2026—exactly three months after the arbitrator transmitted the final award. Dkt. Nos. 1, 3; Dkt. No. 4 ¶ 5. The Court granted that motion a month later. Dkt. No. 10.

Amazon first argues that, by granting the motion for alternative service in March, the Court rendered service to Chunrenlan effective on February 25—when Amazon first emailed and mailed

[2] Amazon also filed a sur-reply and request to strike Chunrenlan's reply brief. Dkt. No. 19. As Amazon's sur-reply observes, Chunrenlan's reply brief fails to meet several requirements of the Local Civil Rules of this District. For instance, as with Chunrenlan's opposition brief, its reply is not signed by local counsel as required by Local Civil Rule 83.1(d)(2). It is also nearly twice the length permitted under Local Civil Rule 7(e)(3). Given the Court's preference to resolve cases on their merits, and because the Court finds Amazon is entitled to relief in any event, the Court exercises its discretion not to strike Chunrenlan's brief. The parties are reminded, however, that compliance with the Local Civil Rules is not optional and that failure to do so may result in sanctions.

the petition to Mr. Lind. Dkt. No. 16 at 4–5. The Court's order states that "[s]ervice on Chunrenlan's domestic counsel by email … and by certified mail … is authorized and deemed effective to provide notice under 9 U.S.C. § 12." Dkt. No. 10 at 5. But it says nothing about retroactively making Amazon's *previous* transmission to Mr. Lind effective to constitute service. Amazon's motion for alternative service did not address whether Federal Rule of Civil Procedure 4(f)(3) authorizes such a retroactive grant of service.

The weight of authority holds that Rule 4(f)(3) does not. That Rule authorizes service on a foreign individual or entity "by other means not prohibited by international agreement, *as the court orders*." Fed. R. Civ. P. 4(f)(3) (emphasis added). The Ninth Circuit has held that this language requires parties to "obtain *prior* court approval for the alternative method of serving process." *Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004) (emphasis added); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) ("[A] plaintiff may not generally resort to email service on his own initiative[.]"). District courts have likewise understood Rule 4(f)(3) and *Brockmeyer* to foreclose a party from serving first and seeking the court's blessing later. *Mongkol Muay Thai Corp. v. JG (Thailand) Co.*, No. 22-CV-00506-BAS-KSC, 2023 WL 12263544, at *4 (S.D. Cal. Aug. 14, 2023) ("Rule 4(f)(3) is available *only* when it is first ordered by the district court.") (citing *Brockmeyer*, 383 F.3d at 806); *Karlsson v. Ewing*, No. CV 14-0420 FMO (EX), 2015 WL 13762929, at *1 (C.D. Cal. Mar. 17, 2015) (denying motion for retroactive service under Rule 4(f)(3) because "an order permitting such service was required prior to service"); *Int'l Raelian Movement v. Hashem*, 2009 WL 2136958, *1 (E.D. Cal. 2009) (same, explaining "the court may not retroactively validate alternative means of service" under Rule 4(f)(3)); *but see Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co.*, No. 03CIV.8554(LTS)(JCF), 2005 WL 1123755, at *4–5 (S.D.N.Y. May 11, 2005) (retroactively approving method of service under Rule 4(f)(3) where service had proved effective in providing notice and defendant had

frustrated the agreed method of service set forth in the parties' contract). The Court's order granting alternative service did not speak to retroactivity and, consistent with this authority, could not have made service to Chunrenlan effective as of February 25.

Nevertheless, the FAA's deadline to serve a petition to vacate is, as Amazon observes, subject to the doctrine of equitable tolling. *Move, Inc. v. Citigroup Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) ("[T]he FAA is subject to the established doctrine of equitable tolling."). While it is a close call, the Court finds equitable tolling appropriate here.

Courts have expressed various articulations of the equitable tolling standard. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The circumstances warranting equitable tolling "must go beyond a 'garden variety claim of excusable neglect.'" *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1193 (9th Cir. 2001) (quoting *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990)). Courts also consider whether tolling would prejudice the opposing party. *Move, Inc.*, 840 F.3d at 1158.

Considering the combination of circumstances here, the Court finds that Amazon acted diligently; that it could not, in any event, have ensured service within three months; and that Chunrenlan would not be prejudiced by tolling the deadline. To begin, the arbitrator's award gave Chunrenlan ten days to calculate its lost profit damages. Amazon could not fully know the impact of the arbitrator's decision to delegate the calculation of damages to Chunrenlan until it received Chunrenlan's calculation. And while Mr. Lind may not have been obligated to accept service on Chunrenlan's behalf, it was not unreasonable of Amazon to expect that he would in light of the parties' prior arrangement. Mr. Lind took another ten days to inform Amazon he would not accept service. And Amazon ultimately moved for alternative service within the FAA's three-month

deadline (albeit, just barely). Even if Amazon had filed its motion earlier, the timeline for resolving the motion would still have been out of Amazon's control. And Amazon's only other alternative—serving Chunrenlan in China under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (*see* Fed. R. Civ. P 4(f)(1))—would almost certainly have taken longer than three months as well. *See Sec. & Exch. Comm'n v. China Sky One Med., Inc.*, No. CV 12–07543–MWF (MANX), 2013 WL 12314508, at *1 (C.D. Cal. Aug. 20, 2013) (recounting ten-month delay by China's central authority during which SEC received no update on its attempts to serve defendants in compliance with the Hague Convention); *Teetex LLC v. Zeetex, LLC*, No. 20-CV-07092-JSW, 2022 WL 4096881, at *1 (N.D. Cal. Sept. 7, 2022) (Chinese process server advised plaintiff that service under the Hague Convention "could take between six to twelve months"). Finally, tolling the deadline will not prejudice Chunrenlan as it has been on notice of Amazon's intent to pursue vacatur since at least January 30, 2026.

Accordingly, the Court finds that equitable tolling is appropriate here. Chunrenlan has appeared, seeks judicial relief of its own related to the award, and does not dispute that it has had actual notice of Amazon's petition. Amazon's deadline to serve the petition is tolled and the petition is deemed timely.

**B. Vacatur of the Award**

Having determined that Amazon's petition is timely, the Court now considers whether the award should be vacated, partially vacated, or confirmed in whole.

The Court's review of an arbitration award is "both limited and highly deferential." *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009) (quoting *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004)). Under the FAA, the Court "must" confirm an award unless it vacates, modifies, or corrects the award. *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009) (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576,

582 (2008)). However, "[a]n award may be void in part, and good for the residue[.]" *Lyle v. Rodgers*, 18 U.S. 394, 409 (1820). Thus, if an arbitrator exceeded his or her powers, and the award is divisible, the Court "may vacate part of the award and leave the remainder in force." *Comedy Club*, 553 F.3d at 1288. But if the invalid part of the award is "so connected with the rest as to affect the justice of the case between the parties, the whole is void." *Lyle*, 18 U.S. at 409.

Amazon contends the award is subject to vacatur under the FAA because the arbitrator "exceeded [his] powers" and engaged in "other misbehavior" that prejudiced Amazon's rights. *See* 9 U.S.C. § 10(a)(3), (4). Because the Court agrees with Amazon as to the first point, which is sufficient to vacate the relevant portion of the award, it does not reach whether the arbitrator engaged in "other misbehavior." The Court also finds that the award is divisible and thus vacates only its offending provision. And the Court exercises its discretion not to remand this matter for further arbitration proceedings.

1. The arbitrator's award of indefinite lost profit damages exceeded his powers.

The FAA provides four grounds for vacating an arbitration award, the last of which applies "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). The Ninth Circuit has held that arbitrators "exceed their powers" when the award is, among other things, "completely irrational[.]" *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 341 F.3d 987, 997 (9th Cir. 2003). "[A]rbitrators can also 'exceed their powers' … when they fail to meet their obligations, as specified in a given contract, to the parties." *W. Emps. Ins. Co. v. Jefferies & Co.*, 958 F.2d 258, 262 (9th Cir. 1992) ((citing *W. Canada S.S. Co. v. Cia. De Nav. San Leonardo*, 105 F. Supp. 452 (S.D.N.Y. 1952))). Amazon argues that the award fails both standards. Dkt. No. 1 at 10. The Court considers each argument in turn, beginning with whether the arbitrator faithfully

executed his obligations under the parties' arbitration contract.[3]

a. *The arbitrator failed to abide by the parties' arbitration agreement.*

The FAA's foundational principle is "that arbitration is a matter of consent." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). "Parties cannot be compelled to arbitrate unless they have agreed to do so." *W. Emps. Ins.,* 958 F.2d at 261 (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)). And they are "generally free to structure their arbitration agreements as they see fit" and to specify "the rules under which that arbitration will be conducted." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995) (first citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 628 (1985) and then quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). By the same token, parties "have a right to arbitration according to the terms for which [they] contracted." *W. Emps. Ins.,* 958 F.2d at 261.

Here, the arbitrator failed to abide by the parties' agreement that the AAA's streamlined "expedited procedures" would apply only in disputes involving claims under $50,000. Under the BSA's arbitration clause, the AAA's "commercial rules" govern arbitration between Amazon and Chunrenlan. Dkt. No. 2-1 at 9 ("The arbitration will be conducted by the [AAA] under its commercial rules."). Those rules establish "expedited procedures" for disputes involving claims below a certain dollar limit. By default, that limit is $100,000. Dkt. No. 2-4 at 11. But the parties can agree to a different threshold if their arbitration agreement so provides. *See id.* ("*Unless the parties agree … otherwise*, the Expedited Procedures shall apply in any case in which no disclosed claim or counterclaim exceeds $100,000[.]" (emphasis added)).

Invoking this clause, Amazon and Chunrenlan agreed in the BSA that the expedited

[3] Amazon also invokes the "manifest disregard of law" standard as yet another basis for vacating the award. Dkt. No. 1 at 10 (citing *Comedy Club*, 553 F.3d at 1293). Because the Court finds ample support for vacating the award on the grounds discussed in this order, it does not reach this alternative basis for doing so.

procedures would "apply only in cases seeking exclusively monetary relief under $50,000[.]" Dkt. No. 2-1 at 9. The parties and the arbitrator proceeded throughout the arbitration on the understanding that the claims at issue satisfied this requirement. Thus, Chunrenlan's arbitration demand asked the arbitrator to order "Amazon to release and remit [to] Claimant its full amount of sales proceeds in its seller account at the time of deactivation, i.e., below $50,000 or below the cap amount for AAA expedited procedure." Dkt. No. 2-2 at 13. Likewise, the arbitrator acknowledged that the expedited procedures applied in his procedural order. Dkt. No. 2-3. And in its arbitration brief, while Chunrenlan argued the BSA's provision lowering the expedited procedures limit to $50,000 was "invalid" (and thus the AAA's $100,000 limit should apply), Chunrenlan nevertheless stated it was "willing to cap its claim amount to $50,000" if the arbitrator disagreed. Dkt. No. 2-5 at 20. In any event, the premise was that Chunrenlan's claims would be capped at the applicable threshold for the expedited procedures—either $50,000 or $100,000.

Based on that shared understanding, both parties forwent many procedural protections by arbitrating under the expedited procedures. Early in the arbitration, for example, the arbitrator denied Amazon's request to stay the proceedings (which Amazon requested because of a ruling in a Tennessee lawsuit involving Chunrenlan) because the expedited procedures do not allow motions except for "good cause." Dkt. No. 2-3 at 4; *see also* Dkt. No. 2-4 at 41. More consequentially, neither party was entitled to discovery (except, again, for "good cause"). Dkt. No. 2-3 at 4; *see also* Dkt. No. 2-4 at 41. And the parties were entitled to only a truncated hearing (Dkt. No. 2-4 at 42), which they agreed to waive (Dkt. No. 2-11 ¶ 13)—presumably, at least in part, because of the relatively low dollar figure at stake.

Unless the parties consented, the AAA's rules did not permit using the expedited procedures if the claims increased beyond the applicable damages cap. Thus, the rules prohibit adding a "new or different claim" after the arbitrator is appointed without approval. Dkt. No. 2-4

at 40. And they provide that "if an increased claim or counterclaim exceeds $100,000 [or such other agreed amount], the case will be administered under the regular Commercial Arbitration Rules unless all parties and the arbitrator agree that the case may continue to be administered under the Expedited Procedures." *Id.* In sum, the parties' agreement was to arbitrate only small claims under the expedited procedures and larger ones under the more robust standard procedures absent an express agreement otherwise.

The arbitrator disregarded that framework by arbitrating the dispute using the basic procedures meant for small claims, but then awarding Chunrenlan, in effect, whatever damages it demanded—ultimately over $270,000 (plus interest). *See* Dkt. No. 14-1 at 8 (ordering payment of lost profits in the "amount calculated by Claimant"). As a result, Amazon was, in effect, ordered to pay Chunrenlan hundreds of thousands of dollars with no opportunity to conduct discovery on the basis for that demand—much less mount any objection to it—even though it never agreed to arbitrate claims of that magnitude without more robust procedures. The arbitrator's execution of his duties violated the parties' agreement not to arbitrate claims exceeding $50,000 using the expedited procedures.

Chunrenlan largely does not defend the portion of the arbitrator's decision awarding lost profit damages, instead arguing that the award should not be *wholly* vacated. *See, e.g.*, Dkt. No. 14 at 17 ("The proper question … is … whether [the] phrasing [of Paragraph VII.4] justifies vacating everything else."); *id.* at 12 (acknowledging due process concerns with post-award procedure but arguing "that issue bears on the mechanism for quantifying additional damages under Paragraph VII.4"); *see id.* at 7 (arguing, in the alternative, "the Court should remand only [Paragraph VII.4] … while leaving the remainder of the Award intact"); *id.* at 14 (same "if the Court concludes … the use of expedited procedures created a problem"). It briefly argues, however, that the arbitrator properly awarded over $50,000 through expedited procedures because

Chunrenlan's claims were below the cap when the arbitration was "initiated." Dkt. No. 14 at 10–11. On that view, however, a party could mislabel their claim as a demand for under $50,000 and then simply increase the demand once the expedited procedures lock in—forcing their counterparty to arbitrate a sizable claim with minimal procedural safeguards. Chunrenlan cites no authority to support this counterintuitive result; and its interpretation has no basis in the BIA or AAA rules, which explicitly seek to prohibit that outcome by setting a defined cap on damages and strictly limiting "increase[s] in amount" or additions of "new or different claim[s.]" Dkt. No. 2-4 at 40, *id.* at 11, Dkt. No. 2-1 at 9.

Chunrenlan also argues that Amazon is bound by the expedited procedures because it participated in the arbitration and never objected until "the end of the case." Dkt. No. 14 at 11. Until the award was issued, however, Amazon had no reason to know it was arbitrating a dispute involving hundreds of thousands of dollars. *See Belt Ry. Co. of Chi. v. United Transp. Union*, 2012 WL 2277723, at *5 (N.D. Ill. 2012) (vacating award where movant "did not have an opportunity to object" to procedural violation before the final award, and thus did not waive its right to do so before the district court). Amazon did not waive its right to challenge the use of expedited procedures when it could not reasonably have anticipated the need to do so any earlier.[4]

In sum, by disregarding the parties' agreement to arbitrate only small disputes using the expedited procedures, the arbitrator failed to meet his obligations under the arbitration contract. The arbitrator therefore exceeded his authority under 9 U.S.C. § 10(d). *W. Emps. Ins.*, 958 F.2d at 262.

[4] Chunrenlan also argues that Amazon should have sought clarification of the award under AAA Rule R-52. Dkt. No. 14 at 13. But that rule does not permit a party to ask the arbitrator to "re-determine the merits of any claim"—it only permits a motion to "interpret the award or correct any clerical, typographical, or computational errors[.]" Dkt. No. 2-4 at 33. Here, the arbitrator's award is unambiguous and not the apparent result of a clerical error. It simply violates the procedures to which the parties agreed by disregarding the damages cap for expedited procedures.

b. *The award meets the "completely irrational" standard.*

The arbitrator's decision was also unmoored from the contract he was tasked with applying. An arbitration award is "completely irrational" if the arbitrator's "decision fails to draw its essence from the agreement." *Aspic Eng'g & Constr. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Comedy Club*, 553 F.3d at 1288). Under this standard, the Court does not decide the "rightness or wrongness" of the decision, but only whether the award—"viewed 'in light of the agreement's language and context, as well as other indications of the parties' intentions'"—is derived from the agreement. *Id.* (quoting *Bosack*, 586 F.3d at 1106). "[I]f an arbitrator is even arguably construing or applying the contract … the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citation modified).

The arbitrator may not, however, "disregard contract provisions to achieve a desired result." *Aspic Eng'g & Constr.*, 913 F.3d at 1167. Thus, while arbitrators have considerable discretion in determining an award, they exceed their authority by "dispens[ing] [their] own brand of industrial justice" while ignoring specific language in the parties' agreement. *Pac. Motor Trucking Co. v. Auto. Machinists Union*, 702 F.2d 176, 177 (9th Cir. 1983) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

Here, the arbitrator awarded lost profit damages, in an amount to be determined by Chunrenlan, without any semblance of applying the governing contract. The BSA expressly forecloses damages "for any loss of profit" or "business" with respect to any claim "arising out of or relating to this agreement[.]" Dkt. No. 2-1 at 6. Amazon cited this provision in its arbitration brief. Dkt. No. 2-7 at 27–28. And Chunrenlan did too, arguing the provision was unenforceable as contrary to public policy. Dkt. No. 2-5 at 25, Dkt. No. 2-9 at 23 (citing *In re Potential Dynamix LLC*, 2:11-bk-28944-DPC, 2021 Bankr. LEXIS 359 (Bankr. D. Ariz. Feb. 15, 2021)). Despite

briefing from both sides on the issue, the arbitrator's decision articulated no response to their arguments, ignored the on-point contractual language, and awarded lost profit damages to Chunrenlan—in whatever amount Chunrenlan calculated—without remark. There is simply no indication the arbitrator was applying the BSA in doing so. *See Black Rock Coffee Bar, LLC v. BR Coffee, LLC*, No. 3:20-CV-976-SI, 2024 WL 1436028, at *8 (D. Or. Apr. 3, 2024), *aff'd*, No. 24-2949, 2025 WL 2048991 (9th Cir. July 22, 2025) (arbitrator exceeded his powers by ignoring on-point authority presented by the parties).

The award's analysis of damages consisted of five sentences, all concerning Amazon's retention of Chunrenlan's sales proceeds under Section 2 of the BSA. Dkt. No. 14-1 ¶¶ 34, 34.[5] Then, in a single sentence in the final section, the arbitrator ordered Amazon to pay whatever damages Chunrenlan might claim based on its own calculations "as a result of the loss of business and profits[.]" *Id.* at 8. The award neither articulated a limit on the scope of such damages nor provided guidance as to *what* lost profit damages Chunrenlan was entitled to recover. Indeed, Chunrenlan ultimately claimed lost profits from the deactivation of its account (Dkt. No. 2-12 at 2–3), even though the award largely dealt with Amazon's retention of sales proceeds and made no finding that the deactivation was improper.[6]

While the arbitrator had considerable leeway to interpret the BSA (or hold certain provisions unenforceable), he was not free to disregard the limitation of liability clause, which had been squarely presented to him by both parties, in order to "achieve a desired result." *Aspic Eng'g*

[5] The arbitrator's award contains two paragraphs labelled "34"—an apparent typographical error. Both contain the arbitrator's analysis of damages.

[6] Indeed, it is unclear how Amazon's improper retention of funds in Chunrenlan's seller account—the central issue addressed in the award—might result in lost business or profits. While Chunrenlan lost the time value of its money, that value is reflected in the arbitrator's award of interest on the retained funds. *See Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992), *as amended on denial of reh'g* (May 22, 1992) ("The cost of delay in receiving money to which one is entitled is the loss of the time value of money, and interest is the standard form of compensation for that loss.").

*& Constr.*, 913 F.3d at 1167. The portion of the award ordering Amazon to pay unspecified lost business or profit damages therefore exceeded the arbitrator's powers for the additional reason that it "fail[ed] to draw its essence from the agreement[.]" *Id.* at 1166.

2. The award is divisible.

Next, the Court must consider whether the award is divisible such that the Court can vacate just the offending portion, or whether that portion is instead "so connected with the rest as to affect the justice of the case between the parties[.]" *Lyle*, 18 U.S. at 409. Amazon contends the award must be vacated in whole because its defects "resulted in a fundamentally unfair arbitration, which cannot be remedied by merely excising one part of the award." Dkt. No. 16 at 11. The Court disagrees.

Setting aside the portion of the decision awarding lost profit damages, none of the defects Amazon identifies undermine the rest of the decision or the arbitration, which largely concerned Amazon's retention of Chunrenlan's sales proceeds. The remaining award grants monetary relief under $50,000 (excluding interest, costs, and fees), making the expedited procedures appropriate. And Amazon does not contend that the arbitrator exceeded his powers either in holding that Section 2 of the BSA is unenforceable or in awarding Chunrenlan the funds in its seller account. While Amazon contends it was unable "to mount or present a defense at multiple stages of the proceedings" (Dkt. No. 16 at 11), that is true only with respect to Chunrenlan's post-award damages calculation. Amazon, in fact, had the opportunity to thoroughly brief the remaining issues decided by the arbitrator. *See* Dkt. Nos. 2-7, 2-10.

The provision of the award concerning lost profit damages (Paragraph VII.4) bears little connection to the rest of the award. It does not flow from the arbitrator's reasoning. Nor does any part of the award depend on it. Indeed, the award contains no other discussion of lost business or profit damages. Because Paragraph VII.4 is divisible from the rest of the award, the Court will

vacate only that provision.

3. The Court declines to remand this matter for further arbitration.

When the Court vacates an arbitration award, it "may, in its discretion, direct a rehearing by the arbitrators." 9 U.S.C. § 10(b). Here, the Court finds it unnecessary to do so. This order vacates only the part of the award directing Amazon to pay Chunrenlan lost profit damages in an amount calculated by Chunrenlan. While Chunrenlan proposes a limited remand for "clarification or quantification" of this provision (Dkt. No. 17 at 12), its defects could be resolved only by wholesale modification. While a Court may remand "an issue to an arbitrator for clarification" or "interpretation[,]" it may not direct the "arbitrator to redetermine an issue which he has already decided." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 734 n.1 (9th Cir. 1982). Because any remand would require the arbitrator to improperly revisit the merits of his determination of lost business or profit damages, the Court exercises its discretion not to order remand for further arbitration.

## III. CONCLUSION

Amazon's petition and motion to vacate the arbitration award (Dkt. No. 1) is GRANTED in part and DENIED in part. Chunrenlan's cross-motion to confirm the award (Dkt. No. 14) is GRANTED in part and DENIED in part. Paragraph VII.4 of the Final Award issued in *Chunrenlan Elec. Tech. Jiangsu Co., Ltd. v. Amazon.com Servs. LLC & Amazon.com, Inc.*, ICDR Case No. 01-24-0007-3814 (ICDR 2025) is VACATED. The rest of the Final Award is CONFIRMED.

This Clerk is DIRECTED to close this case.

Dated this 6th day of August, 2026.

Kymberly K. Evanson
United States District Judge